[Cite as *State ex rel. DeWine v. Crock Constr. Co.*, 2014-Ohio-2944.]

STATE OF OHIO, NOBLE COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, ex rel. | ) | CASE NO. 13 NO 405 |
| MICHAEL DeWINE | ) | |
| OHIO ATTORNEY GENERAL | ) | |
| | ) | |
| PLAINTIFF-APPELLANT | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| CROCK CONSTRUCTION CO., et al. | ) | |
| | ) | |
| DEFENDANTS-APPELLEES | ) | |

CHARACTER OF PROCEEDINGS:    Civil Appeal from the Court of Common
                             Pleas of Noble County, Ohio
                             Case No. 2012-0177

JUDGMENT:                    Affirmed.

APPEARANCES:
For Plaintiff-Appellant:     Atty. Mike DeWine
                             Attorney General of Ohio
                             Atty. Nicholas J. Bryan
                             Atty. Robert C. Moormann
                             Assistant Attorneys General
                             Environmental Enforcement Section
                             30 East Broad Street, 25th Floor
                             Columbus, Ohio  43215

For Defendants-Appellees:    Atty. Michael A. Cyphert
                             Atty. Bozana L. Lundberg
                             Walter I. Haverfield LLP
                             1301 East 9th Street, Suite 3500
                             Cleveland, Ohio  44114

JUDGES:
Hon. Cheryl L. Waite
Hon. Joseph J. Vukovich
Hon. Mary DeGenaro

                             Dated:  June 16, 2014

WAITE, J.

{¶1}   Appellant, the State of Ohio by way of its Attorney General, appeals the decision of the Noble County Common Pleas Court dismissing the state's enforcement action against Appellees Crock Construction Co., Inc., Edward P. Crock, and Dog Town Inc., for numerous environmental violations.  The trial court correctly determined that the instant action was barred by an earlier enforcement action taken by the Noble County prosecutor on behalf of the Noble County Health District in its capacity as a representative of the state under the same provisions for the same violations.   Appellant's arguments against dismissal are without merit and are overruled and the judgment of the trial court is affirmed.

Factual and Procedural History

{¶2}   On August 15, 2012 Appellant filed a complaint for injunction and damages against Appellees.   In it, Appellant alleged that Edward P. Crock, in his capacity as an officer and shareholder of both Crock Construction Co., Inc. and Dog Town, Inc., participated in, controlled, and ordered numerous violations of both the Ohio Administrative Code and Ohio Revised Code governing the disposal of construction and demolition debris ("C&DD").  The state alleged that Crock should be held personally liable for the violations.  Crock Construction and Dog Town share a single business address.  The facility that was alleged to be operated in violation of various code provisions is at a separate location.  Appellant's complaint included nine counts, each alleging multiple violations:   overfilling a construction and demolition debris landfill; failure to repair leachate outbreaks; unlawful cliffing of debris; failure to maintain adequate fire control; failure to manage surface water; failure to comply with

special license conditions; failure to comply with the Ohio Environmental Protection Agency ("OEPA") director's orders; illegal disposal of construction and demolition debris; and open dumping of solid waste. (Compl., Counts 1-9.) Appellant sought preliminary and permanent injunctions to end all outstanding violations, costs of the action, and "joint and several" payment of civil penalties arising from the violations covered by counts one through nine.

{¶3}   Within a week of filing, the matter was set for a status conference. On September 5, 2012 the status conference appears to have taken place, although service was not returned until November of that year. Appellees filed a motion to dismiss the complaint on December 12, 2012, and attached a copy of a consent order entered on July 26, 2012, approximately three weeks before the instant complaint was filed. The consent order was signed by the same judge, in the same court, cited the same code sections and covered violations that occurred at the same location and during the same time period addressed in the instant complaint. The consent order did appear to be somewhat unorthodox, as it was the sole filing in the matter, serving as both the document that initiated and finalized the case. The trial court granted Appellee's motion to dismiss the action on April 23, 2013, holding that because of the consent order the suit was barred by *res judicata* against one defendant and that the complaint failed to state a claim against the other defendants.

## Argument and Law

{¶4}   In seeking reinstatement of its complaint, Appellant frames its argument on appeal as a challenge to a void judgment, allegedly entered by a court without jurisdiction. Appellant directly attacks the validity of the earlier consent order. In

support of its argument Appellant makes several contentions: (1) no civil action that is commenced without the filing of a document entitled "complaint" can result in a valid judgment; (2) the absence of a complaint prevented Appellant from participating in the prior action; (3) Appellant's instant action cannot be barred by a consent order entered in a matter that was not commenced with a complaint; and that (4) even if the consent order has some preclusive effect it does not apply to two of the three defendants named in the state's action. The standard of review for a trial court's decision dismissing an action as *res judicata* is *de novo*. *Hammon v. Ohio Edison Co.*, 7th Dist. No. 2002-Ohio-2287, ¶14. As Appellant raises its arguments without actually presenting any succinct assignments of error, each of the arguments raised by Appellant will be grouped and addressed according to the broad, general issues raised.

(1) <u>The Trial Court's Jurisdiction and the Consent Order.</u>

<u>(a) Subject Matter Jurisdiction</u>

{¶5} The premise of Appellant's entire appeal is that the trial court's decision to adopt the consent order filed by Appellee and the Noble County Health District ("NCHD") has no legal effect because the consent order was the first filing made with the trial court in that case. Appellant contends that because civil actions begin with the filing of a complaint, a complaint is necessary to "acquir[e] jurisdiction" in a court. (Appellant's Brf., p. 10.) Appellant inartfully refers to all types of jurisdiction as "subject matter" jurisdiction, and argues that the parties in the consent order tried to impose jurisdiction in the court by their own agreement in the consent order. While Appellant is correct in its assertion that parties cannot confer "subject matter"

jurisdiction by consent or agreement, the trial court's jurisdiction over the subject matter in this case arises by statute, and does not rely on consent of the parties.

{¶6}   R.C. 3714.11 directs the "attorney general, the prosecuting attorney of the county, or the city director of law where a violation has occurred, is occurring, or may occur, upon the request of the respective board of health of the health district" to "prosecute to termination or bring an action for injunction against any person who has violated, is violating, or is threatening to violate" laws contained in this chapter in common pleas court.  R.C. 3714.11(A).  The section states that the "court of common pleas in which an action for injunction is filed has the jurisdiction to and shall grant preliminary and permanent injunctive relief upon a showing that the person against whom the action is brought has violated, is violating, or is threatening to violate" the chapter.  *Id.*  The statute also provides that any action brought "under this division is a civil action, governed by the Rules of Civil Procedure." *Id.*

{¶7}   It is apparent, here, that Appellant does not actually raise any defect in the trial court's subject matter jurisdiction.  In fact, Appellant recognizes such jurisdiction because it filed the instant injunction and damages action against the same party in the same court pursuant to the same statute.  The various district court cases cited by Appellant that discuss the inability of parties to create subject matter jurisdiction by agreement are not relevant to the subject matter jurisdiction of the court to consider and act on the earlier consent order.  Thus, subject matter jurisdiction has no bearing on the dismissal of the complaint in the instant matter.

(b)  Form of the Pleading

(i)  Civil Rules

**{¶8}** Appellant's next argument is really the crux of Appellant's appeal. Appellant challenges the form of the document filed jointly by Appellee and the NCHD in the prior action, Noble County Common Pleas Case No. 212-0167. Appellant contends that Civ.R. 3(A) and caselaw require the filing of a document actually entitled as a "complaint" before a court can "acquir[e] jurisdiction." (Appellant's Brf., p. 10.) Appellee disputes this point, noting that Civ.R. 3, entitled "Commencement of Action; Venue," by its own terms relates to "venue" and does not discuss jurisdiction. Civ.R. 3(G). Appellant's contention, then, does not accurately reflect the civil rule or the caselaw cited in support of its argument.

**{¶9}** While Appellees are correct, a number of the civil rules not raised by Appellant do provide useful insight into how the document filed by Appellee and the NCHD should be construed. Civ.R. 7 explains that there are two pleadings generally filed in every civil action: a complaint and an answer. Civil Rules 8 through 15 address the idea that merely placing the word "complaint" on a document is not sufficient to make the document into a pleading. Pursuant to Civ.R. 8, it is the contents of the document that establish whether a pleading "sets forth a claim for relief." Civ.R. 8(A). This rule requires that a claim for relief "contain (1) a short and plain statement of the claim showing that the party is entitled to relief, and (2) a demand for judgment for the relief to which the party claims to be entitled." Civ.R. 8(A). Civ.R. 8 states that every pleading "shall be simple, concise, and direct. No technical forms of pleading or motions are required." Civ.R. 8(E)(1). All pleadings, regardless of form, "shall be so construed as to do substantial justice." Civ.R. 8(F).

{¶10} Civ.R. 9 clarifies that although there is no form requirement with regard to pleadings or motions, some matters must be specifically included in a pleading. These include, but are not limited to: conditions precedent, which may be averred generally to have been satisfied; official documents or acts, which may be averred generally by stating that the document was issued or the act done "in compliance with law"; the existence of a judgment or decision, which may be established in a pleading by mentioning the decision "without setting forth matter showing jurisdiction to render it"; and time and place, which are "material and shall be considered like all other averments of material matter." Civ.R. 9(C), (D), (E), and (F).

{¶11} Civ.R. 10 provides basic parameters that should be satisfied by the pleading document, which include: the size of the paper, a caption including the names and addresses of the parties, and "separate statements" of "[a]ll averments of claim or defense * * * in numbered paragraphs, the contents of each of which shall be limited as far as practicable to a statement of a single set of circumstances." Civ.R. 10(E), (A), and (B).

{¶12} The document filed by Appellees and NCHD which Appellant now challenges begins by identifying the defendant "Crock Construction" as the "owner and operator" of a construction and demolition debris ("C&DD") site located "at 19425 Township Road 297, Caldwell, Noble County, Ohio." (12/11/12 Motion to Dismiss, Settlement Agreement and Consent Order, Exh. A, ¶1.) The document is organized in numbered paragraphs which contains averments of claims, each addressing a single set of circumstances. NCHD states in ¶3 of the document: "This action was filed by the Noble County Prosecutor's Office, on behalf of the NCHD, pursuant to

O.R.C., Section 3714.11 for injunctive relief and civil penalties resulting from the operation of the Facility by Crock Construction." *Id.* In ¶2, the document specifies that "[t]he Noble County Health Department ('NCHD') is a health district authorized by Ohio Revised Code ('O.R.C.'), Chapter 3709 to enforce various health-related requirements within Noble County, Ohio. The NCHD has been placed upon the approved list of health districts by the Director of Environmental Protection pursuant to O.R.C., Section 3714.09(A) for the purposes of issuing and enforcing C&DD licenses under O.R.C., Chapter 3714." *Id.*

{¶13} The document also discusses venue and jurisdiction in ¶5: "This Court has jurisdiction over the subject matter of this action pursuant to O.R.C., Section 3714.11. This Court also has personal jurisdiction over the Parties. Venue is proper in this Court since the Facility is located in Noble County, Ohio." *Id.* Paragraphs 8 through 43 of the document catalogue an extensive history of environmental, regulatory, and statutory violations at the Crock Construction landfill site, numerous notices of violation sent by both the NCHD and the OEPA, and repeated inspections of the property, concluding in May of 2012 with a final notice of violation sent by the OEPA on June 1, 2012. *Id.* at ¶43.

{¶14} After identifying the parties, the authority of the plaintiff to seek relief, legal basis of the relief sought, and the authority of the court to grant relief, the parties then detail, in paragraphs 48-50, the remedies sought in the form of consent orders, civil penalties, and injunctive relief. It is discernable, then, that pursuant to Civil Rules 8-15, this document includes all information necessary in order to be construed as a complaint. And while an answer to a complaint is usually filed, it is

axiomatic that many cases proceed without the filing of an answer. Certainly, the document also sets forth admissions of violations and agreed remedies. Hence, applying Civ.R. 8(F), which requires that "[a]ll pleadings shall be so construed as to do substantial justice," it appears that the document was correctly construed under the Civil Rules by the trial court as sufficient to both initiate and conclude an action to enforce R.C. 3714.01 *et seq.*

### (ii) Caselaw

{¶15} In addition to inaccurately arguing that Civ.R. 3 requires the filing of a document specifically captioned "complaint" in order to establish jurisdiction, Appellant contends that caselaw imposes the same requirement. However, none of the cases relied on by Appellant support its argument on this issue, and some of these actually appear to support the opposite contention.

{¶16} Appellant cites *State ex rel. Balson v. Harnishfeger*, 55 Ohio St.2d 38, 377 N.E.2d 750 (1978), for the proposition that "[t]he Ohio Rules of Civil Procedure clearly provide that all civil actions are commenced by filing a complaint with the court." (Appellant's Brf., p. 10.) *Harnishfeger* was an appeal filed from a *sua sponte* dismissal of a divorce complaint by the Court of Appeals for Allen County. It involved two parties who filed competing 1977 divorce actions within two days of one another in two different Ohio counties. The issue before the Supreme Court was which court with seemingly concurrent jurisdiction should take precedence to hear the matter. The Court framed its issue as follows: "as between courts of concurrent jurisdiction, which court, to the exclusion of all others, has the right to adjudicate upon the whole issue and to settle the rights of the parties — Is it the court in which the action was

first filed or the court in which both the filing of the action and the required service of process is first completed?" *Id.* at 39. The Court answered the question by reaffirming its prior holding that "[s]ervice of process" is "a condition precedent to vesting of jurisdiction in determining which of two courts has the exclusive right to adjudicate the whole case." *Id.* at 39-40.

{¶17} The central premise of this case is completely unrelated to the issue raised by Appellant and does not support the proposition for which Appellant cites to this case. Appellant has not challenged the trial court's personal jurisdiction over the parties. Again, Appellant explicitly recognized that jurisdiction when it filed its matter against the same parties in the same court.

{¶18} Appellant also cites to *Wilson v. Ohio Department of Rehab. & Corr.*, 73 Ohio App.3d 496, 597 N.E.2d 1148 (8th Dist.1991). *Wilson* involves the subject matter jurisdiction of the Ohio Court of Claims, which, like the authority of the trial court in this matter, is statutory. In *Wilson*, the court dealt with a challenge to a trial court's jurisdiction to grant summary judgment when the motion for summary judgment was filed *instanter*. The *Wilson* court found that the lower court's statutory subject matter jurisdiction was properly invoked by the filing of a complaint, that service on the defendant was complete, and that the court had jurisdiction to consider summary judgment. The court concluded that the appellant's jurisdictional argument was without merit and affirmed the decision of the court of claims. Again, this case does not address Appellant's current argument and instead confirms that courts with subject matter jurisdiction may grant relief based on the substance, not the form, of a filing. *Id.*

{¶19} Appellant next refers to *Was v. A.J.L.S., Inc.,* 21 Ohio App.3d 280, 487 N.E.2d 918 (1985). In *Was*, the issue concerns whether a trial court's jurisdiction over a matter can be altered by a party's failure to appeal an arbitration award within the time limit established by the local rule. Not only does *Was* not stand for the proposition Appellant advocates ("the filing of a valid complaint is a necessary prerequisite to a court's acquiring jurisdiction" (Appellant's Brf., p. 10.)), the Ninth District's analysis runs contrary to Appellant's argument that a procedural rule defining venue should be construed against its terms and applied substantively to alter jurisdiction. *Was* suggests that courts should focus on preserving substantive rights instead of interpreting procedural requirements in a manner where they would infringe on the assertion of such rights.

{¶20} Appellant also relies on *MRK Technologies v. Accelerated Systems Integration*, 8th Dist. No. 84747, 2005-Ohio-30 and *State ex rel. Browning*, 5th Dist. No. CT2011-CA-55; CT2011-CA-60; 2012-Ohio-2158 in an attempt to bolster its argument. *MRK Technologies* holds that the dismissal of an action by a plaintiff, which divests a court of jurisdiction over the matter, cannot be reversed by the agreement of the parties. The Eighth District held in *MRK* that once a party dismisses an action, a new action must be filed before a trial court can enforce any settlement agreement that arose and was terminated by dismissal of the original action.

{¶21} Appellant mistakenly believes that this Eighth District case "would unquestionably govern the facts in the case at bar." (Appellant's Brf., p.11.) We remind Appellant that a decision by a sister district may be persuasive or illustrative,

but that it would not govern the decision of this district. *Inter alia*, *State v. Wright*, 7th Dist. No. 11-MA-14, 2013-Ohio-4445. Even if *MRK* were controlling law, the issue it addresses is the manner in which parties seeking to enforce a settlement agreement should proceed after voluntary dismissal of the action that resulted in the agreement. *MRK* does not address the manner in which a court should construe a filing that states a cause of action, invokes the jurisdiction of the court and simultaneously requests the court to adopt an agreed resolution of the causes of action raised within that filing. *MRK* is not relevant or persuasive in the context of the facts presented in the matter at bar.

{¶22} Likewise, in *State ex rel. Browning*, Appellant fails to present applicable caselaw. In fact, *Browning* appears to support the exact opposite position advocated by Appellant. In *Browning*, the Fifth District rejected an argument similar to that advanced by the state in this matter when a challenge to the jurisdiction of the juvenile court to enforce a child support obligation was filed because the enforcement action was initiated by a document captioned "motion" rather than "complaint." The appellant in *Browning* argued that under Civ.R. 3, because the "action was commenced by filing of a 'motion,'" the trial court "never acquired subject matter jurisdiction and therefore all judgments allegedly rendered in this instant matter in the trial court are null and void ab initio[sic]." *Id.* at ¶41. The Fifth District's analysis of this argument is instructive:

> Courts of this state have recognized that the name given to a pleading or motion is not controlling. Rather, the substance of the pleading or motion determines the operative effect thereof. Pleadings are to be

construed to do substantial justice, and claims for relief should concisely set forth only those operative facts as are necessary to give "fair notice of the nature of the action."

In the case at bar, the plain words of the pleading that was filed set forth the claim for child support and health care insurance. * * *

Accordingly, in the case at bar, captioning the matter as a "motion" rather that [sic] a "complaint" did not deprive the trial court of subject matter jurisdiction. (Citations omitted.)

*Id.*, ¶43-45. Following this reasoning, then, a plain reading of the content of the document captioned "Settlement Agreement and Consent Order" which was filed by the NCHD was sufficient to set forth a justiciable claim, establish the trial court's jurisdiction over the issue, and assert the standing of the parties to reach an agreement resolving the claim. Appellant's argument that the filing of a separate document specifically entitled "complaint" is crucial to invoke the trial court's jurisdiction is without merit.

(2) The Parties to and Effect of the Consent Order.

(a) The State

**{¶23}** Appellant next contends that the consent order should not operate as a bar against Appellant because Appellant was not a party to or participant in the prior action and that the present action involves different parties and issues. Appellant argues that following *O'Nesti v. DeBartolo Realty Corp.*, 113 Ohio St.3d 59, 2007-Ohio-1102, 862 N.E.2d 803 and *Quality Ready Mix v. Mamone*, 35 Ohio St.3d 224,

520 N.E.2d 193 (1988) "the State must have been an active participant in the Attempted Action and the State's current Complaint must contain the same issues and parties." (Appellant's Brf., p. 13.) Appellant contends that the application of *res judicata* in this instance would violate the due process rights of the state and impede its ability to "protect the citizens of Ohio through enforcement of Ohio's environmental laws." (Appellant's Brf., p.14.) Appellant's arguments present two distinct issues: (1) whether the state was a party in the original action; and (2) whether the state's complaint involves parties or claims that are not barred by *res judicata.*

{¶24} In this action, the state (by way of the Attorney General's office) seeks to enforce certain provisions of R.C. 3714.01 *et seq.* on behalf of the OEPA. In the consent action, the NCHD sought to enforce (by way of the Noble County Prosecutor's office) these same provisions on behalf of the OEPA. R.C. 3714.01 *et seq.* governs the disposal of construction and demolition debris. It is clear that the authority to license and oversee entities that dispose of regulated material is given to both the OEPA and to those county health departments that the director of the OEPA designates, pursuant to R.C. 3714.05:

> The board of health of each health district maintaining a program on the approved list [under R.C. 3714.09 and] shall provide for the issuance of permits to install for and the inspection of, licensing of, and enforcement of standards governing construction and demolition debris facilities under this chapter and rules adopted under it. The director of environmental protection shall provide for the issuance of permits to install for construction and demolition debris facilities, the inspection

and licensing of facilities, and the enforcement of standards in health districts that are not on the approved list * * * and may provide for the inspection of the facilities and enforcement of standards in health districts that are on the approved list * * * Further, the director may provide for the issuance of permits to install in a health district on the approved list if so requested by the applicable board of health * * *

The director of the OEPA is tasked with placing health districts on the approved list, thus giving them enforcement power, but the effect of that placement is controlled by statute, and does not necessarily preclude the director from taking action, even in a county with an approved health district:

(A) The director of environmental protection shall place each health district that is on the approved list under division (A) or (B) of section 3734.08 * * * on the approved list for purposes of issuing permits to install and licenses under this chapter. Any survey or resurvey of any such health district conducted under section 3734.08 * * * shall also determine whether there is substantial compliance with this chapter. If the director removes any such health district from the approved list under division (B) of that section, the director shall also remove the health district from the approved list under this division and shall administer and enforce this chapter in the health district until the health district is placed on the approved list under division (B) of section 3734.08 * * * or division (B)(1) of this section.

* * *

(B)(1)  Upon the request of the board of health of a health district that is not on the approved list * * * for the purpose of permitting and licensing construction and demolition debris facilities under this chapter if the director determines that the board is both capable of and willing to enforce all of the applicable requirements of this chapter and rules adopted under it.

* * *

(3)  If, after a survey or resurvey * * * the director determines that a health district is not eligible to be placed on the approved list or to continue on that list, the director shall certify that fact to the board of health of the health district and shall administer and enforce this chapter and rules adopted under it in the health district until such time as the health district is placed on the approved list.

(4)  Whenever the director is required to administer and enforce this chapter in any health district under division (A) or (B)(3) of this section, the director is hereby vested with all of the authority and all the duties granted to or imposed upon a board of health under this chapter and rules adopted under it within the health district. * * *

(C)  Nothing in this chapter limits the authority of the director to initiate and pursue any administrative remedy or to request the attorney

general, the prosecuting attorney of the appropriate county, or the city director of law of the appropriate city to initiate and pursue any appropriate judicial remedy available under this chapter to enforce any provision of this chapter and any rules or terms or conditions of any permit or license or order adopted or issued under this chapter with respect to any construction and demolition debris facility regardless of whether the facility is located in a health district that is on the approved list under this section.

R.C. 3714.09. Notably, the enforcement mechanisms provided by statute are available to both the board of health in an approved district (and the NCHD was so approved) and the Ohio director of environmental protection. R.C. 3714.11 allows:

(A) The attorney general, the prosecuting attorney of the county, or the city director of law where a violation has occurred, is occurring, or may occur, upon the request of the respective board of health of the health district, the legislative authority of the political subdivision in which a violation has occurred, is occurring, or may occur, or the director of environmental protection, shall prosecute to termination or bring an action for injunction against any person who has violated, is violating, or is threatening to violate any section of this chapter, applicable rules adopted under it, or terms or conditions of a permit, license, or order issued under it. The court of common pleas in which an action for injunction is filed has the jurisdiction to and shall grant preliminary and permanent injunctive relief upon a showing that the person against

whom the action is brought has violated, is violating, or is threatening to violate any section of this chapter, applicable rules adopted under it, or terms or conditions of a permit, license, or order issued under it. The court shall give precedence to such an action over all other cases.

(B)  If the board of health of the health district in which a violation has occurred or is occurring or the director determines that any person has violated or is violating this chapter, a rule adopted under it, or a term or condition of a permit, license, or order issued under it, the board or the director may request in writing that the attorney general, the prosecuting attorney of the county, or the city director of law where the violation has occurred or is occurring bring an action for civil penalties in any court of competent jurisdiction. Such an action shall have precedence over all other cases. The court may impose upon the person a civil penalty of not more than ten thousand dollars for each day of each violation of this chapter * * * Any action under this division is a civil action, governed by the Rules of Civil Procedure.

(C)  The director and board of health, within their respective territorial jurisdictions, may, upon their own initiative, investigate or make inquiries regarding the disposal of construction and demolition debris.

(D) This chapter does not abridge rights of action or remedies in equity, under common law, or as provided by statute or prevent the state or any municipal corporation or person in the exercise of their rights in

equity, under common law, or as provided by statute to suppress nuisances or to abate or prevent pollution.

Thus, although the OEPA and designated health districts (like NCHD) share the authority to license and enforce C&DD provisions, it is the OEPA, exclusively, that is given rulemaking powers. R.C. 3714.02.

**{¶25}** Appellant's actions and the (admittedly somewhat odd) factual history presented in this matter highlight the absence of a provision governing or defining precedence if, as here, both the director and the board of health seek to address the same violations. Appellant's argument on appeal does not address the relationship between the state and the health district or the relationship between Crock Construction, Edward P. Crock and Dog Town, Inc. Instead, Appellant focuses on notice and the state's interest in enforcement.

**{¶26}** The plain language of the statutory provisions, however, explicitly provides both the OEPA and the NCHD with authority under the same provisions to license, investigate, and enforce for the same stated purpose: ensuring "that the facilities will not create a nuisance, fire hazard, or health hazard or cause or contribute to air or water pollution." R.C. 3714.02. Where, as here, two entities have the same power to license and regulate, and the enabling legislation does not distinguish or limit the authority of either to act, they have concurrent powers. Although the statute confers concurrent licensing, investigative and enforcement powers and does not limit the powers of enforcement of either entity, it does state that the OEPA, not the authorized local authority, is responsible for the rulemaking necessary to implement the legislation. Where, as here, two parties share the

authority to act under a single statute and one has the ability to direct the other, they appear to be in privity with one another.

{¶27} Although the exact nature of the relationship between the state and an approved local health district is not clearly delineated, two of the cases offered by Appellee in support of the trial court's decision help to clarify the issue: *State ex rel. Hofstetter v. Kronk*, 20 Ohio St.2d 117, 254 N.E.2d 15 (1969) and *State ex rel. Wilson v. Preston*, 173 Ohio St. 203, 181 N.E.2d 31 (1962).

{¶28} In *Wilson*, the Ohio Supreme Court found:

6. In actions brought by or against the various agencies of the state or the heads thereof in the course of the performance of their governmental duties or to compel the performance of such duties, the state is the real party in interest.

7. The state being the real party in interest in actions brought by or against its various agencies or the heads thereof in the performance of their governmental duties or to compel the performance of such duties is, under the doctrine of estoppel by judgment, bound by the judgments in such actions.

*Wilson*, paragraphs six and seven of the syllabus. The *Wilson* Court rejected the argument that a 99-year leasehold granted by the state, as represented by the director of the department of public works in an ejectment action, could not trigger *res judicata* or estoppel by judgment against the state, as represented by the director of highways in a subsequent appropriation proceeding.

**{¶29}** The *Wilson* Court concluded that because the state "necessarily * * * can act only through its agents" the state is the real party in interest in both actions." *Id.* at 210-211. According to the Court, because the state was the real party in interest in both cases, the state was bound by the prior leasehold judgment in the subsequent ejectment action. The Court applied the "principle of estoppel by judgment" which requires that "the final adjudication of a material issue by a court of competent jurisdiction [bind] the parties in any subsequent proceeding between or among them, irrespective of a difference in forms or causes of action." *Id.* at 212. It noted: " '[a]n estoppel is defined as a bar which precludes a person from denying the truth of a fact which has in contemplation of law become settled by the acts and proceedings of judicial officers or by the act of the party himself.'" *Id.* The Court concluded:

> [W]hen the state uses its own courts to enforce its rights, it should be bound by the judgments in the same manner as its citizens. Any other holding would mean that a citizen could be harassed continually or that the state would never be bound by any judgment. It is clear that the state is not exempt from the operation of the principles of estoppel by judgment.

*Id.* at 213. Thus, the Court has held that judgments resulting from actions by or against a state agency operate as *res judicata* against the state when other agencies or individuals subsequently act on behalf of the state in the course of their duties.

**{¶30}** In *Hofstetter* the Supreme Court applied the same analysis to actions by different officials in their capacity as representatives of a county, and found:

1.  Under the principle of estoppel, the actual and necessary litigation of an issue binds the parties and their privies in any subsequent litigation between or among them, irrespective of the forms or causes of action. * * *

2.  The court will look behind the nominal parties to the substance of the cause to determine the real parties in interest.

3.  In an action brought by or against an agency of a county, or the head thereof, in the courts of the performance of a governmental duty or to compel the performance of such a duty, the county is a real party in interest.

*Hofstetter*, paragraphs one, two, and three of the syllabus.  In *Hofstetter*, a county court judge sought payment of his salary during the years remaining in his term after his seat was abolished by the legislature.  The Supreme Court held that the judge's decision not to appeal an earlier mandamus action, which resulted in an order that he turn over court records when the county court was abolished, precluded the later suit over salary because the ruling in the earlier matter necessarily involved determining whether the judge was entitled to retain his position.  The subsequent suit would involve relitigating the same question:  whether he had an entitlement to his position after the county court was dissolved by legislation.  The Court explained that the judge was collaterally estopped from relitigating the issue despite the fact that the subsequent mandamus actions were filed against different state officials by the judge

(as compared with the original action which was filed against the judge by the county prosecutor).

{¶31} This matter, much like *Hofstetter*, involves two entities, one a state agency and one a county department, that are both authorized representatives of the state for enforcement of environmental regulations. *See e.g. Trumbull Cty. Bd. of Health v. Snyder*, 74 Ohio St.3d 357, 658 N.E.2d 783 (1996) (finding that R.C. Chapter 3714 specifically grants authority to the OEPA to regulate C&DD facilities, and county boards of health have no independent authority to do so, but instead act pursuant to the authority of the OEPA according to the provisions of R.C. Chapter 3714 and the administrative code). Applying the same analysis used by the Supreme Court in evaluating the application of *res judicata* to state and county representatives, the state was the real party in interest in both the current and the prior actions. As the real party in interest in both suits, the state is precluded by *res judicata* with regard to claims against Crock Construction because both suits involve the same environmental violations, under the same statutory authority, committed by the same parties, during the same period of time between 1999 and 2012. To the extent that the second suit might allege additional or different violations during the same period, and a review of both documents does not indicate that it does, the state is nevertheless bound, because additional violations in the same period constitute "claims which were *or might have been* litigated in a first lawsuit." (Emphasis sic.) *Nat'l Amusements, Inc. v. City of Springfield*, 53 Ohio St.3d 60, 62, 558 N.E.2d 1178 (1990).

<u>(b) The Defendants</u>

**{¶32}** Appellant is correct that Edward P. Crock, individually, and Dog Town, Inc., were not specifically identified as parties to the original action filed by NCHD, but were specifically included in the complaint in this matter. (Complaint ¶6; 10 "Mr. Crock by himself, and/or with others personally participated in, controlled and/or ordered the violations alleged in this Complaint, or he had the authority to prevent them and failed to do so. Accordingly, Mr. Crock is personally liable for the violations alleged.") Although Appellant names Dog Town, Inc., no allegations directed at the involvement of Dog Town, Inc. are actually made in the complaint. Instead, Appellant restates personal liability claims against Edward P. Crock (Complaint, ¶7-9. "Mr. Crock, by virtue of his position as an officer and shareholder of Dog Town, alone or in conjunction with others, caused, participated in, controlled, and/or ordered the violations alleged in this Complaint. Accordingly, Mr. Crock is personally liable for these violations.") According to Appellant's complaint, Crock Construction Co., Inc. and Dog Town, Inc. share the same business address "17990 State Route 78, Caldwell, Noble County" and are both "property owners" and "operators" under Ohio Administrative Code Section 3745-400-01(EE).

**{¶33}** The NCHD consent order does not address the involvement of Dog Town, Inc. or the personal liability of Edward P. Crock. Instead, the order is limited to the satisfaction of "any civil and administrative liability of Defendant Crock Construction and its officers, employees, agents successors in interest and assigns for all claims alleged in the NCHD's Complaint or known by the NCHD at the time that this Consent Order is entered by the Court." (12/11/12 Motion to Dismiss, Settlement Agreement and Consent Order, Exh. A, ¶44.) Appellant argues that these

differences between the consent order and the complaint should allow Appellant to pursue a second enforcement action for violations that occurred during the same period on the same property.

**{¶34}** However, the claims made by Appellant against Edward P. Crock and Dog Town, Inc., involve both forms of *res judicata*: claim preclusion (estoppel by judgment) and issue preclusion (collateral estoppel).

**{¶35}** "The doctrine of res judicata applies to those who were parties in the prior action, to those who were in privity with the litigants, and also to those who could have joined in the action and did not." *Jarvis v. Wells Fargo Bank*, 7th Dist. No. 09 CO 6, 2010-Ohio-3283, ¶22. Because determining what "constitutes privity in the context of *res judicata* is somewhat amorphous" the Supreme Court has "applied a broad definition to determine whether the relationship between the parties is close enough to invoke the doctrine;" " 'a mutuality of interest, including an identity of desired result,' may create privity." *Kirkhart v. Keiper*, 101 Ohio St.3d 377, 379, 2004-Ohio-1496, 805 N.E.2d 1086, ¶8. In this instance, Appellant alleged that Edward P. Crock so completely controlled the corporations identified in its complaint that he should be subject to personal liability for all violations of R.C. 3714 that occurred between 1999 and 2012. Assuming the allegations in Appellant's complaint to be true, any interest of Edward P. Crock was completely aligned with his codefendants and he shared a mutuality of interest with those entities he is alleged to have controlled and directed. "The doctrine of res judicata applies to those who were parties in the prior action, to those who were in privity with the litigants, and also to those who could have joined in the action and did not." *Jarvis, supra*.

**{¶36}** The existence of privity between the parties named in Appellant's lawsuit is further buttressed by Appellant's decision to seek "joint and several payment" of civil damages for all nine counts of the complaint. (Compl., p. 13 parts J and K.) Due to the complete alignment of interests of Mr. Crock, Crock Construction, and Dog Town, Inc. alleged by Appellant and the fact that the alleged liability arises from the same occurrences contained in the consent order, it is clear that the parties are in privity and claim preclusion applies to all three.

**{¶37}** In addition to the identity of parties, the underlying issue is the same in both suits: responsibility for environmental violations between 1999 and 2012 at 19425 Township Road 297, Caldwell, Noble County, Ohio. NCHD's decision to settle and agree to judgment against Crock Construction for violations on the subject property during the period identified in both suits operates as a bar to Appellant's suit. Appellant is barred by both claim and issue preclusion from filing a duplicative enforcement action against Appellees for violations occurring on the same property during the same period covered by the consent order.

**{¶38}** Appellant contends that the application of *res judicata* to bar its claims against additional parties would violate the state's due process rights. "Since the doctrine of *res judicata* serves important public and private interests, exceptions to the doctrine's application should be narrowly construed." *National Amusements, Inc. v. City of Springdale*, 53 Ohio St.3d 60, 558 N.E.2d 1178 (1990), syllabus. The "doctrine of *res judicata* requires a plaintiff to present every ground for relief in the first action, or be forever barred from asserting it." *Id.* at 62. "[A] judgment entered by consent is 'as effective as if the merits had been litigated' and is 'just as

enforceable as any other validly entered judgment.'" *Ohio Pyro, Inc. v. Ohio Dept. of Commerce*, 115 Ohio St.3d 375, 380, 2007-Ohio-5024, 875 N.E.2d 550, ¶24 quoting *Gilbraith v. Hixson*, 32 Ohio St.3d 127, 129, 512 N.E.2d 956 (1987). In this matter, the state was statutorily the real party in interest in both suits, although it was represented by different entities. Hence, there can be no due process concern raised by the application of *res judicata* in this matter.

## Conclusion

**{¶39}** So long as a document conforms to the requirements of a complaint, it need not be entitled "complaint" in order to validly invoke the jurisdiction of a court. Here, the content of the document entitled "consent order" stated a cause of action and invoked the jurisdiction of the trial court. The state is the real party in interest in both suits and is estopped from asserting in the second suit claims arising out of the same occurrences that formed the basis of the original enforcement action. While it is somewhat unorthodox to have the complaint and settlement entry in one single document, there is no legal reason why these cannot be so combined. Appellant's arguments are without merit. The judgment of the trial court is affirmed in full.

Vukovich, J., concurs.

DeGenaro, P.J., concurs.