[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Snodgrass v. Harris*, Slip Opinion No. 2024-Ohio-3130.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2024-OHIO-3130

SNODGRASS, AUD., APPELLANT, *v*. HARRIS,[1] TAX COMMR., ET AL., APPELLEES.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Snodgrass v. Harris*, Slip Opinion No. 2024-Ohio-3130.]**

*Taxation—Public-utility property—R.C. 5703.05(C), read in pari materia with R.C. 5717.02(A), precludes the right of a county auditor to appeal tax commissioner's final determination setting forth values agreed on in settlement agreement but does not preclude county auditor's right to appeal whether settlement agreement constitutes a valid legal settlement—Board of Tax Appeals' decision dismissing county auditor's appeal affirmed.*

(No. 2023-0354—Submitted October 24, 2023—Decided August 20, 2024.)

APPEAL from the Board of Tax Appeals, Nos. 2022-1247 and 2022-1296.

_____

1. When this case was filed, Sarah O'Leary was the interim tax commissioner. Patricia Harris is the current tax commissioner, and we have automatically substituted her for O'Leary as an appellee in this case. *See* S.Ct.Prac.R. 4.06(B) and Civ.R. 25(D)(1).

DEWINE, J., authored the opinion of the court, which DONNELLY, BRUNNER, and DETERS, JJ., joined. FISCHER, J., dissented, with an opinion joined by KENNEDY, C.J., and STEWART, J.

**DEWINE, J.**

{¶ 1} This case involves the tax valuation of a pipeline that runs through 13 Ohio counties. After the Ohio Tax Commissioner established a valuation for the pipeline, the pipeline's owner exercised its right to appeal that valuation to the Board of Tax Appeals ("BTA"). That appeal was resolved through a settlement agreement between the tax commissioner and the pipeline's owner. The tax commissioner issued a final determination setting forth the valuation of the pipeline that had been agreed on in the settlement. The auditor of one of the counties in the pipeline's territory, Lorain County, was dissatisfied with the settlement and appealed the tax commissioner's final determination to the BTA. The gist of the county auditor's argument on appeal was that the tax commissioner had failed to follow the appropriate statutory criteria in rendering the valuation of the property.

{¶ 2} In the proceeding below, the BTA dismissed the county auditor's appeal on the basis that the matter had been resolved through the settlement agreement. The county auditor now appeals the BTA's decision to this court.

{¶ 3} To resolve this case, we must reconcile two statutes. R.C. 5703.05(C) ("the tax-commissioner-settlement statute") empowers the tax commissioner to compromise a tax dispute. R.C. 5717.02 ("the tax-appeal statute") authorizes an appeal of a final determination of the tax commissioner by the county auditors of the counties to which the revenues from a tax would primarily accrue. So, the question here is what happens when the tax commissioner settles a claim but then a county auditor attempts to undo that settlement through an appeal?

{¶ 4} We answer this question by applying the familiar rule of statutory construction that statutes in pari materia—that is, statutes relating to the same

subject matter—should be construed together. Thus, a county auditor may appeal a result that has been reached through a settlement, but that appeal is subject to the tax commissioner's authority to compromise a tax claim. In other words, a county auditor may not challenge on appeal the substance of the compromise that has been reached by the tax commissioner. Here, this means that we affirm the decision of the BTA.

### The Proceedings Below

{¶ 5} Nexus Gas Transmission, L.L.C., owns and operates a gas-transmission pipeline that stretches across northern Ohio. The tax commissioner issued a final determination assigning a true value of $1,620,358,699 to the pipeline for tax year 2019. Nexus filed an appeal to the BTA. Nexus argued that the tax commissioner erred by failing to make certain downward adjustments to the value of the property and that its true value for 2019 was $615,695,340. Nexus and the tax commissioner engaged in discovery and obtained experts to support their proposed valuations. But ultimately rather than litigate the appeal to resolution, the tax commissioner and Nexus entered into a settlement agreement, which established a 2019 true value of $950,000,000 and also resolved their ongoing dispute about the valuation for tax years 2020 and 2021. To implement the settlement, the tax commissioner issued a new final determination setting forth the values in the settlement agreement.

{¶ 6} J. Craig Snodgrass, the auditor of Lorain County, filed an appeal.[2] The auditor in his notice of appeal asked the BTA to reinstate the tax commissioner's pre-settlement determination of a $1,620,358,699 true value. He asserted that the tax commissioner had committed various errors in applying the statutory criteria set forth in R.C. 5727.11(A) for determining the valuation of a

---

2. The auditors of eight other counties in the pipeline's territory, along with two affected school districts, have filed an amicus brief with this court asking us to affirm the BTA's decision and uphold the settlement agreement reached by the tax commissioner and Nexus.

public utility's property. That division provides that, except as otherwise provided, "the true value of all taxable property . . . shall be determined by a method of valuation using cost as capitalized on the public utility's books and records less composite annual allowances as prescribed by the commissioner." *Id.* But the provision further provides that "[i]f the commissioner finds that application of this method will not result in the determination of true value of the public utility's taxable property, the commissioner may use another method of valuation." *Id.*

{¶ 7} The issues that the county auditor raised in his notice of appeal to the BTA related solely to the tax commissioner's application of the tax-valuation statute. In the county auditor's first two claimed errors, he asserted that the tax commissioner's final determination rejected the statutory-based formula for determining the value of the pipeline; in the third, fourth, and fifth claimed errors, he argued that the methods used in the final determination were "unreasonable and unlawful"; in his sixth, seventh, eighth, and ninth claimed errors, he contended that the final determination was erroneous and unreasonable because it relied on incorrect information and values; and finally, in the tenth and final claimed error, he asserted that due to the first nine errors, the final determination erroneously understated the taxable value of Nexus's Ohio property by roughly $580,000,000 each tax year. In other words, the case that the auditor sought to present on appeal was that notwithstanding the fact that the commissioner's final determination was the product of a settlement, the determination was illegal because it did not comport with the statutory formulation. The county auditor's appeal did not allege that the final determination was inconsistent with the settlement agreement, that the settlement agreement was invalid, or that the tax commissioner lacked authority to enter into the agreement. The auditor simply asked the BTA to resolve the case in the same way that it would have had there been no settlement at all.

{¶ 8} Nexus moved to dismiss the county auditor's appeal. Among other things, Nexus argued that the county auditor's appeal was moot because the

valuation dispute had been resolved through its settlement agreement with the tax commissioner. Nexus contended that the county auditor failed to challenge the settlement contract in his notice of appeal and instead raised claims "exclusively related to the now-defunct (i.e., moot) valuation dispute."

{¶ 9} The BTA granted the motion to dismiss. BTA Nos. 2022-1296 and 2022-1247, 2023 WL 1992250 (Feb. 9, 2023). It held that although the county auditor was not expressly bound to the settlement agreement, "that does not necessarily mean that he can seek an alternative valuation from this Board through an appeal for those years for which a value was stipulated." *Id.* at \*4. The tribunal found that the auditor's appeal was moot because there was no longer a live issue or controversy. *Id.* at \*5-6. It explained that the controversy in this case was the valuation of the pipeline and that the controversy ended when the tax commissioner entered into the settlement agreement with Nexus and resolved the valuation issue by issuing a final determination setting forth the agreed values in the settlement agreement. *Id.* at \*5. The BTA further noted that "there is no argument that the Commissioner acted beyond her authority" in reaching the settlement. *Id.* It also explained that because the county auditor had not participated in Nexus's appeal of the tax commissioner's initial final determination, he could not now complain about the settlement that resolved the appeal. *Id.*

### The Statutory Scheme

{¶ 10} This case requires that we reconcile two statutory provisions: the tax-commissioner-settlement statute, which empowers the tax commissioner to compromise a tax dispute, and the tax-appeal statute, which allows a county auditor to appeal a final determination of the tax commissioner. So, we begin our analysis with those two statutes.

{¶ 11} Article XII, Section 2 of the Ohio Constitution mandates that all personal property be taxed according to its "true value in money." To satisfy this mandate, the General Assembly granted the tax commissioner the "exclusive power

to value and assess public utility property." *Toledo Edison Co. v. Galvin*, 38 Ohio St.2d 210, 212 (1974) (construing R.C. Ch. 5727). This requires the tax commissioner, under R.C. 5727.10, to annually determine "the true value in money of all taxable property"—including public utility property—in accordance with R.C. 5727.06.

{¶ 12} The General Assembly vests the tax commissioner with "all powers, duties, and functions of the department of taxation." R.C. 5703.05. Among these powers is the authority "to consent[] to the compromise and settlement of tax claims" on behalf of the State of Ohio. R.C. 5703.05(C). The commissioner "has authority to compromise and settle a tax claim." *Storey v. Limbach*, 1995 Ohio App. LEXIS 590, *16 (7th Dist. Feb. 17, 1995).

{¶ 13} A county auditor's right to appeal arises from the tax-appeal statute. That statute provides that "[e]xcept as otherwise provided by law, appeals from final determinations by the tax commissioner" may be taken to the BTA by, among others, "the county auditors of the counties to the undivided general tax funds of which the revenues affected by that decision would primarily accrue." R.C. 5717.02(A).

### Harmonizing the Two Statutes

{¶ 14} The question in this case is how we reconcile the tax commissioner's authority to value property and compromise tax claims with a county auditor's authority to appeal a final determination of the tax commissioner. The county auditor essentially asserts that his right to appeal is absolute. In the county auditor's view, it doesn't matter that the tax commissioner has entered into a contract on behalf of the State of Ohio that settles a dispute—a county auditor can challenge that settlement on appeal and argue that the settlement is improper because it does not achieve the result that would have been obtained had the matter been fully litigated. Under this view, an objecting county auditor essentially holds a trump

6

card that allows the auditor to undo any settlement entered into by the tax commissioner.

{¶ 15} To accept the county auditor's position would require that we privilege the auditor's statutory right to appeal over the commissioner's statutory authority to settle claims. By its nature, a settlement agreement prevents future litigation about the merits of the claims that have been resolved. *See, e.g., Continental W. Condominium Unit Owners Assn. v. Howard E. Ferguson, Inc.*, 74 Ohio St.3d 501, 502 (1996) ("It is axiomatic that a settlement agreement is a contract designed to terminate a claim by preventing or ending litigation and that such agreements are valid and enforceable by either party."). "A settlement agreement supersedes and extinguishes all preexisting claims the parties intended to settle." 15B Am.Jur.2d, Compromise and Settlement, § 24, at 168 (2021).

{¶ 16} Adopting the county auditor's view would effectively read out of the Revised Code the tax commissioner's authority to settle claims, at least in situations where a county auditor objects to the settlement. After all, if the tax commissioner's authority to settle claims on behalf of the State is subject to the right of a county auditor to appeal that settlement, then the tax commissioner does not have the right to settle claims. To allow an appeal of what has been compromised means that there is no compromise.

{¶ 17} Because there is no textual basis in the statutes to support such a reading, we are hesitant to read the provisions in a manner that would favor the county auditor's statutory authority over the tax commissioner's statutory authority. The doctrine of in pari materia holds that statutes relating to the same subject matter should, if possible, be construed harmoniously. *State ex rel. Thurn v. Cuyahoga Cty. Bd. of Elections*, 72 Ohio St.3d 289, 294 (1995); *see* Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* 252-255 (2012). We use this doctrine to reconcile provisions relating to the same subject. *See State ex rel. Cordray v. Midway Motor Sales, Inc.*, 2009-Ohio-2610, ¶ 25. The doctrine assumes that

because a statutory provision is part of an entire body of law, "if possible, [the provision] should no more be interpreted to clash with the rest of the corpus than it should be interpreted to clash with other provisions of the same law." Scalia & Garner at 252.

{¶ 18} In this case, we cannot read either statute standing alone because they point in opposite directions. One statute gives a county auditor the right to appeal; the other denies a county auditor the right to appeal by allowing the tax commissioner to settle claims. To read either statute standing alone would negate the other.

{¶ 19} Thus, rather than treat this case as an either/or proposition, to correctly interpret the statutory scheme, we must give effect to both provisions— that is, to understand the auditor's right to appeal under the tax-appeal statute in light of the commissioner's right to settle claims under the tax-commissioner-settlement statute. When we do so, this becomes a fairly easy case.

{¶ 20} When the two statutes are harmonized, the General Assembly's statutory design becomes apparent. The tax-appeal statute allows a county auditor to appeal a final determination to the BTA. The tax-commissioner-settlement statute empowers the commissioner to resolve a tax dispute through a settlement agreement. In this case, the tax commissioner adopted the settlement agreement as a final determination, so the county auditor has the right to appeal that final determination under the tax-appeal statute. But the scope of that appeal is limited.

{¶ 21} The county auditor may not appeal the agreed value or the legal issues compromised through settlement because this would render the tax commissioner's power to settle meaningless, undermining the General Assembly's statutory design. By its very nature, a settlement precludes what the county auditor attempts to do here—replace the compromise with a litigated result. *See* 1 Restatement of the Law 2d, Judgments, § 24 and 27 (1982); *see also Walther v. Walther*, 102 Ohio App.3d 378, 383 (1st Dist. 1995) ("Neither a change of heart nor

poor legal advice is a ground to set aside a settlement agreement."); *O'Neill v. Showa Denko K.K.*, 101 Ohio App.3d 345, 351 (8th Dist. 1995) (cross-claimant could not reopen codefendants' settlement with plaintiff to prove plaintiff's liability, because such an act would "defeat the . . . finality of settlement agreements"). Indeed, a settlement agreement ordinarily may not be challenged apart from claims of fraud, duress, overreaching, undue influence, or disputes over the meaning or application of the settlement's terms. *See Richmond v. Evans*, 2015-Ohio-870, ¶ 21-22 (8th Dist.).

{¶ 22} But that does not mean that a county auditor will never be able to appeal a settlement. A county auditor may raise issues on appeal that are not inconsistent with the tax commissioner's statutory authority to settle claims. For example, a county auditor might argue on appeal that a settlement agreement is void because it was entered into as a result of fraud or duress. A county auditor might argue that the tax commissioner's final determination did not accurately reflect the terms of the settlement. Indeed, one can imagine a host of possible issues that might be raised that do not depend on undoing what was agreed to in the settlement, but rather assert that the final determination was not the result of a lawful settlement.

{¶ 23} The dissent misunderstands this point saying that it is logically inconsistent to allow a county auditor to challenge a settlement based on fraud but not on the essence of the compromise itself. *See* dissenting opinion, ¶ 67. What the dissent misses is that the latter challenges *what* has been compromised while the former challenges *whether* the matter has been legally compromised. *See* 26 Lord, *Williston on Contracts*, § 69:1, at 497 (4th Ed. 2019) ("One who has been fraudulently induced to enter into a contract has not assented to the agreement since the fraudulent conduct precludes the requisite mutual assent"). It is perfectly consistent to hold that the tax commissioner's authority to settle a claim precludes the right of a county auditor to appeal what has been compromised in the settlement

agreement while not precluding the right to appeal whether the settlement agreement constitutes a valid legal settlement.

{¶ 24} Such a result is in accord with the tax-appeal statute. The statute by its terms allows the appeal of a "final determination" of the tax commissioner; it does not allow for an appeal of a tax commissioner's settlement or a compromise. Here, the final determination simply recited the compromise that had been agreed on. Thus, the county auditor could challenge that final determination by arguing that it did not accurately reflect the compromise or that there had been no compromise at all because of fraud, duress, or some other such reason. But the county auditor could not challenge the essence of the compromise itself because to do so would be inconsistent with the tax commissioner's authority to settle tax claims.

{¶ 25} Harmonizing the two statutes in this manner not only finds support in the in pari materia doctrine, but also in the language of the tax-appeal statute. Recall that the tax-appeal statute provides the county auditor a right to appeal "[e]xcept as otherwise provided by law." R.C. 5717.02(A). The law otherwise provides that the tax commissioner has the authority to settle claims. The "except as otherwise provided by law" verbiage recognizes that the county auditor's right to appeal is not unlimited but rather subject to limitations, such as the tax commissioner's settlement authority.

{¶ 26} Ignoring the "except as otherwise provided by law" language, the county auditor and the dissent assert that if the General Assembly intended to limit a county auditor's right to appeal settlements that have been reduced to a final determination by the tax commissioner, it would have said so in the tax-appeal statute. But that argument proves too much. One could just as easily say that if the General Assembly intended to make the tax commissioner's authority to settle subject to a county auditor's right to appeal, it would have said so in the tax-

commissioner-settlement statute. But the General Assembly did not write such language into either statute. Thus, our duty is to apply the meaning of both statutes.

**We Affirm the Decision of the BTA**

{¶ 27} The BTA dismissed this case on the theory that the challenges raised by the auditor of Lorain County were moot because the tax commissioner had settled the valuation issue. The county auditor argues that the case is not moot because a live controversy continues to exist regarding the proper valuation of the pipeline.

{¶ 28} But regardless of whether this case is technically moot, the BTA reached the correct result. In his notice of appeal, the only issues that the county auditor raised concerned the appropriate methodology for valuation of the pipeline. Because these disputes had been resolved in the tax commissioner's settlement agreement with Nexus, they could not be relitigated on appeal. Thus, the BTA properly dismissed the appeal.

{¶ 29} We affirm the Board of Tax Appeals' decision dismissing the county auditor's appeal.

Decision affirmed.

---

**FISCHER, J., joined by KENNEDY, C.J., and STEWART, J., dissenting.**

{¶ 30} The majority opinion alleges to resolve this case with an in pari materia reading of two statutes. Unfortunately, that reading fails in many ways.

{¶ 31} Appellant, Lorain County Auditor J. Craig Snodgrass, appeals a decision by the Board of Tax Appeals dismissing his appeal from the final determination by appellee tax commissioner. That final determination sets forth, for the purpose of Ohio's public-utility personal-property tax, *see* R.C. Ch. 5727, the taxable value of the personal property of appellee Nexus Gas Transmission, L.L.C., for the 2019, 2020, and 2021 tax years. This case is rather unusual, and the resolution set forth in the majority opinion fails to correctly address this important

factor, i.e., that the final determination did not arise from a contested administrative proceeding between the tax commissioner and Nexus, but, rather, the tax commissioner and Nexus negotiated a settlement agreement, parts of which the tax commissioner then adopted in the final determination.

{¶ 32} Although Ohio law generally authorizes a county auditor to appeal a final determination when the tax revenues at issue would primarily accrue to the county in which the county auditor serves, *see* R.C. 5717.02(A), the board *agreed* with Nexus that the final determination entered by the tax commissioner was not appealable by Snodgrass. Among other things, the board reasoned that because the final determination arose from a settlement agreement, a live issue was no longer presented, thereby rendering Snodgrass's appeal moot.

{¶ 33} Snodgrass's principal argument here is that the board's decision effectively nullifies his statutory right to appeal the tax commissioner's final determination. I agree. Accordingly, I would reverse the board's decision and remand the cause to the board for further proceedings.

## I. BACKGROUND

### A. Statutory background

{¶ 34} Ohio law vests "exclusive power" in the tax commissioner to "value and assess public utility property." *Toledo Edison Co. v. Galvin*, 38 Ohio St.2d 210, 212 (1974) (construing R.C. Ch. 5727). In doing so, the tax commissioner *must* annually determine the "true value in money of all taxable property" of a public utility in accordance with R.C. 5727.06 and the "total taxable value of such property" in accordance with R.C. 5727.111. R.C. 5727.10. The tax commissioner must generally use a cost-capitalization method to determine true value but may depart from this method if it does "not result in the determination of true value of the public utility's taxable property." R.C. 5727.11(A); *see also Texas E. Transm. Corp. v. Tracy*, 78 Ohio St.3d 83, 85-86 (1997). In arriving at the taxable value of a public utility's property, the tax commissioner applies a specified percentage to

her true-value determination. R.C. 5727.111. In the case of a pipeline company, the statute prescribes 88 percent as the percentage to apply. R.C. 5727.111(D). For a public utility whose taxable property is located in one taxing district, the tax commissioner must "apportion the total taxable value thereof to that taxing district." R.C. 5727.15. But when a public utility has taxable property located in more than one taxing district, the tax commissioner must "apportion the total taxable value thereof among the taxing districts" according to law. *Id.*

{¶ 35} The tax commissioner must annually assess a public utility's taxable property, and this "action . . . shall be evidenced by a preliminary assessment that reflects the taxable value apportioned to each county and each taxing district in the county." R.C. 5727.23. Unless the public utility files a petition for reassessment, the preliminary assessment becomes final. *Id.* But if the public utility files a petition for reassessment under R.C. 5727.47, then "the assessment shall become final when the tax commissioner issues a final determination." R.C. 5727.23. The tax commissioner must serve a copy of her final determination on the public utility and "the applicable county auditor." R.C. 5727.47(E). Under Ohio law, "appeals from final determinations by the tax commissioner . . . may be taken to the board of tax appeals by the taxpayer . . . or by the county auditors of the counties to the undivided general tax funds of which the revenues affected by that decision would primarily accrue." R.C. 5717.02(A).

*B. Factual background*

{¶ 36} The facts in this case are undisputed. Nexus owns and operates an interstate gas-transmission pipeline and qualifies as a public utility under R.C. Ch. 5727. Nexus's pipeline system consists of approximately 256 miles of 36-inch diameter pipe and associated equipment. About 83 percent of the pipeline runs through 13 Ohio counties, including Lorain County, with associated facilities also located within Ohio.

{¶ 37} For tax year 2019, the tax commissioner issued a preliminary assessment determining that Nexus's property had a true value of $1,620,358,699 and, after applying the 88 percent figure prescribed by R.C. 5727.111(D), a taxable value of $1,425,915,660. Nexus filed a petition for reassessment, but the tax commissioner disagreed with the claims advanced by Nexus for adjusting the assessment and issued a final determination upholding the original calculation. Nexus appealed the tax commissioner's final determination to the board.

{¶ 38} While the matter was pending before the board, the tax commissioner and Nexus negotiated a settlement agreement. According to that settlement agreement, the total taxable value of Nexus's property would be $836,000,000 for the 2019 tax year, $832,773,620 for the 2020 tax year, and $822,603,590 for the 2021 tax year. At the time, Nexus had petitions for reassessment pending before the tax commissioner for the 2020 and 2021 tax years. An exhibit to the settlement agreement apportioned the taxable value for each of the three tax years among the taxing districts through which Nexus's pipeline runs.

{¶ 39} To implement the settlement agreement, the tax commissioner and Nexus filed a joint motion with the board requesting that the board remand the then-pending matter related to the 2019 tax year to the tax commissioner, whereupon she would issue a final determination reflecting the agreed-on values. The board granted the motion and remanded the matter to the tax commissioner for further proceedings.

{¶ 40} On remand, the tax commissioner issued a new final determination setting forth the values reflected in the settlement agreement for the 2019, 2020, and 2021 tax years. (Unless the context indicates otherwise, all subsequent uses of the term "final determination" refer to this second final determination.)

{¶ 41} Both Nexus and Snodgrass appealed the tax commissioner's second final determination to the board. Nexus filed its notice of appeal first, anticipating that Snodgrass would appeal because, according to Nexus, Snodgrass had stated

publicly that he would appeal. In its notice of appeal, Nexus noted that its appeal was a "protective filing consistent with the terms of, and preserving NEXUS' rights set forth in, the settlement agreement." (Capitalization in original.) Snodgrass filed his notice of appeal a few days later.

{¶ 42} Nexus moved to dismiss Snodgrass's appeal. In reviewing Nexus's motion, the board determined that the question whether a county auditor may appeal a tax commissioner's final determination memorializing a settlement agreement with a taxpayer was one of first impression. The board agreed with Nexus that Snodgrass could not appeal the final determination. The board advanced several rationales in support of its conclusion, reasoning that (1) the case was moot because it did not feature a live controversy, (2) the final determination was the product of a ministerial act, (3) Snodgrass's failure to appeal the first final determination foreclosed him from appealing the second final determination, and (4) further litigation brought on by Snodgrass's appeal should be avoided because such litigation would result in a lack of finality for Nexus and the other counties to whom Nexus's tax payments would accrue. Snodgrass appealed the board's decision to this court.

## II. ANALYSIS

{¶ 43} Snodgrass's brief presents five propositions of law that each raise strictly legal questions. This court's review is accordingly de novo. *Stingray Pressure Pumping, L.L.C. v. Harris*, 2023-Ohio-2598, ¶ 18. This court would then apply the same de novo standard of review to Nexus's jurisdictional arguments. *See Abraitis v. Testa*, 2013-Ohio-4725, ¶ 17.

### A. Nexus's jurisdictional arguments

{¶ 44} I begin with Nexus's jurisdictional arguments. Nexus first argues that because Snodgrass's notice of appeal to the board did not attack the settlement agreement, the board lacked jurisdiction over Snodgrass's appeal. This argument hinges on Nexus's view that the key instrument in this controversy is the settlement

agreement, not the final determination: "Before litigating the proper application of tax valuation statutes," Nexus argues, "the Auditor first must successfully refute the validity of the Settlement Agreement."

{¶ 45} In construing former R.C. 5717.02, this court held that a notice of appeal that does not meet the requirements of R.C. 5717.02 is insufficient to invoke the board's jurisdiction. *See Brown v. Levin*, 2008-Ohio-4081, ¶ 17, *superseded by statute as stated in Obetz v. McClain*, 2021-Ohio-1706. R.C. 5717.02(C) provides that a "notice of appeal [to the board] shall contain a short and plain statement of the claimed errors in the determination . . . of the tax commissioner . . . showing that the appellant is entitled to relief and a demand for the relief to which the appellant claims to be entitled." This language from R.C. 5717.02(C), passed by the General Assembly in 2013, amended an earlier version of the statute in order to eliminate a "procedural pitfall requiring unwary taxpayers to provide a laundry list of errors," *Obetz* at ¶ 21. By passing the amendment, the General Assembly "helped to ensure that tax appeals are decided on their merits—not denied because of a technical defect." *Id.*

{¶ 46} Here, Nexus's argument fails, not because it rests on a technical reading of R.C. 5717.02(C), but because it does not rest on the statute at all. R.C. 5717.02(C) requires that the appellant identify errors contained in the tax commissioner's "[final] determination," not some other instrument such as a settlement agreement. Because Snodgrass challenged the final determination, as Nexus concedes, the fact that he failed to challenge the settlement agreement is inconsequential.

{¶ 47} Nexus's second jurisdictional argument claims that the board lacked jurisdiction over Snodgrass's appeal because his notice raised "statutory-based valuation claims of error that were not addressed by the Commissioner['s]" final determination. In support, Nexus points to language in *DeWeese v. Zaino*, 2003-Ohio-6502, ¶ 21, in which this court observed that "the only issues that can be

appealed to the [board] from a final determination by the Tax Commissioner are those that were considered by him [or her], as set forth in his [or her] final determination." This court further explained that if a county auditor could "go outside the Tax Commissioner's final determination and raise issues on appeal that were not considered by the Tax Commissioner in his [or her] final determination, the [board] would no longer be reviewing a determination of the Tax Commissioner." *Id.* at ¶ 22. I reject Nexus's argument.

**{¶ 48}** To begin, *DeWeese* does not control, because, unlike here, this court did not have a final determination before us in *DeWeese* that merely memorialized certain portions of a settlement agreement. Indeed, nothing in *DeWeese* supports the view that the tax commissioner may curtail the scope of issues that an appellant may bring before the board by entering, as here, a perfunctory order that lacks any meaningful analysis of the relevant law or facts. Holding otherwise renders the tax commissioner's final determinations virtually unappealable.

**{¶ 49}** But beyond this, Snodgrass has not injected a new issue. The tax commissioner's final determination in this case announced a determination of value. And Snodgrass's notice of appeal attacked that determination of value with statutory arguments. Snodgrass can hardly be faulted for doing so because, as a statutory creation, the tax commissioner must exercise her powers in accordance with the limits defined by statute. *See Talawanda City School Dist. Bd. of Edn. v. Testa*, 2015-Ohio-5450, ¶ 31.

### B. Snodgrass's propositions of law

#### 1. Proposition of law No. 1

**{¶ 50}** Snodgrass's first proposition of law states: "The tax commissioner cannot deprive county auditors of their independent right to appeal the commissioner's final determination under R.C. 5717.02(A) by entering into a settlement agreement with the taxpayer." Snodgrass argues that R.C. 5717.02(A) unambiguously conferred on him the right to appeal the tax commissioner's final

determination even though that determination memorialized the terms of a settlement agreement between the tax commissioner and Nexus.

{¶ 51} R.C. 5717.02(A) provides that "appeals from final determinations by the tax commissioner of . . . valuations . . . may be taken to the board of tax appeals . . . by the county auditors of the counties to . . . which the revenues . . . primarily accrue." In *Hatchadorian v. Lindley*, 3 Ohio St.3d 19, 20 (1983), *superseded by statute as stated in French v. Limbach*, 59 Ohio St.3d 153, 156, fn. 1 (1991), on which Snodgrass relies, this court observed that this language "was meant to describe a class of persons entitled to appeal" and "[the county auditor] is clearly a member of that class."

{¶ 52} *Hatchadorian* did not involve an appeal from an entry captioned as a final determination but, rather, an appeal from the tax commissioner's certificate issued under R.C. 5727.23 that certified the value of a public utility's property apportioned to each county auditor's county. *Hatchadorian* at 20. Moreover, as Nexus points out, in 1989, the General Assembly legislatively overruled this court's holding in *Hatchadorian* by amending R.C. 5727.23. *See French* at 156, fn. 1, citing Am.Sub.S.B. No. 156, 143 Ohio Laws, Part I, 891, 914. Thus, the holding in *Hatchadorian* does not directly control here.

{¶ 53} Even so, this court's general observation in *Hatchadorian* regarding the county auditor's right to appeal remains true—namely, that R.C. 5717.02(A) provides that a county auditor is within the class of persons entitled to appeal the tax commissioner's final determination of value to the board, provided that the revenues associated therewith primarily accrue to the county in which the county auditor serves. No one here disputes that the revenues associated with this case accrue primarily to Lorain County.

{¶ 54} As this court explained in *Adams v. Testa*, 2017-Ohio-8853, ¶ 18, to be appealable under R.C. 5717.02(A), the action in question must be "(1) an assessment, reassessment, valuation, determination, finding, computation, or order

made by the tax commissioner; (2) a final determination; and (3) appealed by the taxpayer, the person to whom notice was required to be given, the director of budget and management, or a county auditor."

{¶ 55} These criteria are met here: (1) the final determination is plainly a valuation because it sets out the taxable value of Nexus's personal property; (2) the tax commissioner's determination of that value is final "in the sense that it is not preliminary or tentative," *Adams* at ¶ 24; and (3) the appeal was initiated by Snodgrass—a county auditor who is within the class of persons authorized to appeal. The fact that Snodgrass has appealed a final determination of value that arose from a settlement agreement rather than an adjudication is immaterial—R.C. 5717.02(A) does not draw such a distinction. *Id.* at ¶ 32 ("nothing in the plain language of the statute or in our case law limits 'final determination[s]' to those acts resulting from an adjudication" [bracketed text in original]).

{¶ 56} The board, however, saw things differently, reasoning that were a county auditor permitted to appeal a final determination that was predicated on a settlement, the settling parties' interest in finality would be lost, thus undermining the very purpose for entering into the settlement agreement in the first place.

{¶ 57} It is true that "public policy favors the finality of litigation," *Van DeRyt v. Van DeRyt*, 6 Ohio St.2d 31, 38 (1966), and that "[t]he law encourages settlement of disputes," *Blodgett v. Blodgett*, 49 Ohio St.3d 243, 246-247 (1990). But these considerations cannot sway my reading of R.C. 5717.02, because "'[t]he role of this Court is to apply the statute as it is written—even if we think some other approach might "accord[] with good policy."' " (Second brackets in original.) *Johnson v. Montgomery*, 2017-Ohio-7445, ¶ 15, quoting *Burrage v. United States*, 571 U.S. 204, 218 (2014), quoting *Badaracco v. Commr. of Internal Revenue*, 464 U.S. 386, 398 (1984). This court is not Ohio's General Assembly and must enforce the statute as written if a party has not raised a constitutional challenge to the statute.

**{¶ 58}** By its terms, R.C. 5717.02(A) does not limit the scope of a county auditor's right to appeal, even when an appeal may disrupt another party's interest in the finality of a settlement agreement. Any limitation to that effect must derive from a legislative enactment. *See Wheeling Steel Corp. v. Porterfield*, 24 Ohio St.2d 24, 27-28 (1970) ("Neither the Board of Tax Appeals, nor this court, may legislate to add a requirement to a statute enacted by the General Assembly.").

**{¶ 59}** For its part, Nexus observes that R.C. 5703.05(C) empowers the tax commissioner to "compromise and settle[] . . . tax claims." In exercising this power with respect to the matters set forth in the settlement agreement, Nexus claims that the tax commissioner "put an end to the litigation" before the board. In support, Nexus points to a line of cases stressing the binding nature of settlement agreements and the judiciary's role in enforcing them according to their terms. *See, e.g.*, *Bostick Foundry Co. v. Lindberg, a Div. of Sola Basic Industries, Inc.*, 797 F.2d 280, 283 (6th Cir. 1986) ("Once concluded, a settlement agreement is as binding, conclusive, and final as if it had been incorporated into a judgment and the actual merits of the antecedent claims will not thereafter be examined."); *Continental W. Condominium Unit Owners Assn. v. Howard E. Ferguson, Inc.*, 74 Ohio St.3d 501, 502 (1996) ("It is axiomatic that a settlement agreement is a contract designed to terminate a claim by preventing or ending litigation and that such agreements are valid and enforceable by either party."); *Spercel v. Sterling Industries, Inc.*, 31 Ohio St.2d 36, 39 (1972), quoting *Cummins Diesel Michigan, Inc. v. The Falcon*, 305 F.2d 721, 723 (7th Cir. 1962) ("'a settlement agreement . . . voluntarily entered into . . . will be summarily enforced by the Court' ").

**{¶ 60}** Nexus argues that when the tax commissioner exercises her settlement authority under R.C. 5703.05(C), a county auditor's right to appeal under R.C. 5717.02(A) is foreclosed. This reading would render the Ohio General Assembly's law, R.C. 5717.02(A), superfluous, thus "violat[ing] the precept that we 'should construe statutes to give effect to all the enacted language,' " *Ceccarelli*

*v. Levin*, 2010-Ohio-5681, ¶ 20, quoting *Church of God in N. Ohio, Inc. v. Levin*, 2009-Ohio-5939, ¶ 30. And Nexus is mistaken in saying that this reading trades one problem for another by rendering R.C. 5703.05(C) superfluous. Contrary to Nexus's argument, preserving R.C. 5717.02(A) does not leave R.C. 5703.05(C) without *any* work to do. *See Polselli v. Internal Revenue Serv.*, 598 U.S. 432, 443 (2023), quoting *Nielsen v. Preap*, 586 U.S. 392, 414 (2019) ("a clause that 'still has work to do' is not superfluous"). A county auditor's ability to appeal a final determination tracing to a settlement agreement does not automatically mean that in every case the settlement is a nullity. At most, it means that the settlement (or parts of it) may be potentially at risk. If that is problematic from a tax-policy perspective, as Nexus says that it is, then the General Assembly can enact a fix. *See Stingray Pressure Pumping*, 2023-Ohio-2598, at ¶ 22 ("Our task is not to make tax policy but to provide a fair reading of what the legislature has enacted . . . ."). But it is not the role of this court to fix a problematic policy.

{¶ 61} This court's decision in *Lucas v. Limbach*, 35 Ohio St.3d 71 (1988), which Nexus cites, is not to the contrary. There, the tax commissioner consented to a plan of arrangement in a bankruptcy proceeding that had stipulated a specific amount that the state would be paid toward a corporation's sales-tax indebtedness. After consenting to this arrangement, the tax commissioner assessed a derivative liability against one of the corporation's officers. This court held that the tax commissioner's consent to the arrangement barred her from assessing the officer. *Id.* at 73. Dispositive here is that *Lucas* says nothing about the scope of the county auditor's appeal rights under R.C. 5717.02(A) that remain after settlement.

{¶ 62} I note that Snodgrass argues that Nexus has tacitly conceded that the final determination is appealable under R.C. 5717.02(A), citing language in the sixth (unnumbered) paragraph of the settlement agreement. Even if the tax commissioner and Nexus agreed that an appeal would lie, this would not matter.

*See Chapman Ents., Inc. v. McClain*, 2021-Ohio-2386, ¶ 8 (parties' agreement that a taxpayer had properly appealed under R.C. 5717.02 was immaterial).

{¶ 63} I also find the majority opinion's analysis, including its reliance on the in pari materia canon of statutory construction, unpersuasive. *See* majority opinion, ¶ 4, 17-21. "Under the in pari materia rule of statutory construction, a court must read all statutes relating to the same general subject matter together to give proper force and effect to each one." *In re Application of Duke Energy Ohio, Inc.*, 2017-Ohio-5536, ¶ 27. However, "[t]he in pari materia rule may be used to interpret a statute but only when some doubt or ambiguity exists." *Id.* Like other canons of construction, the in pari materia rule may *not* be used to create ambiguity when none exists in the statutory text. *See Cleveland v. State*, 2019-Ohio-3820, ¶ 17 (lead opinion), citing *State v. Krutz*, 28 Ohio St.3d 36, 37-38 (1986), and *Ali v. Fed. Bur. of Prisons*, 552 U.S. 214, 227 (2008).

{¶ 64} The majority opinion's resorting to the in pari materia rule is improper in this case. Standing alone or together, neither R.C. 5717.02(A) nor R.C. 5703.05(C) is ambiguous. R.C. 5717.02(A) states that "[e]xcept as otherwise provided by law, appeals from final determinations by the tax commissioner of . . . valuations . . . may be taken to the board of tax appeals . . . by the county auditors of the counties to . . . which the revenues affected by that decision would primarily accrue." The tax commissioner in this case made a final determination of the taxable value of Nexus's property, and by its plain terms, R.C. 5717.02(A) grants Snodgrass the right to appeal that final determination unless some other provision of law creates an exception to that right to appeal.

{¶ 65} The majority opinion posits that R.C. 5703.05(C) provides such an exception, *see* majority opinion at ¶ 3, 17, but R.C. 5703.05(C) does not address a county auditor's right to appeal. Rather, its plain and unambiguous language merely authorizes the tax commissioner to compromise and settle tax claims. If the General Assembly intended to limit a county auditor's right to appeal settlements

that have been reduced to a final settlement determination by the tax commissioner, it would have said so. Instead, the legislature unambiguously and broadly provided in R.C. 5717.02(A) that appeals from final determinations may be taken by a county auditor.

{¶ 66} In fact, R.C. 5703.05(C) uses only a few words to authorize the tax commissioner to settle tax claims—it provides that the tax commissioner may "[e]xercis[e] the authority provided by law relative to consenting to the compromise and settlement of tax claims." Missing from this language is any mention of an appeal brought by a county auditor from a settlement agreement reduced to a final determination. Notwithstanding that silence in R.C. 5703.05(C), the majority opinion's analysis relies on its own notions of common sense to input a limit on appellate rights into the statute—i.e., that a county auditor may appeal a settlement reduced to the tax commissioner's final determination on "a host of possible issues" so long as those issues "do not depend on undoing what was agreed to in the settlement," majority opinion at ¶ 22. Those words, however, are the words of the majority, not of the applicable statute.

{¶ 67} Thus, the majority opinion never justifies the line it draws, and its reasoning is obviously logically inconsistent. The basic premise of the majority opinion's argument is that there must be a limit on a county auditor's right to appeal to avoid rendering the tax commissioner's power to settle "meaningless," *id.* at ¶ 21. But under that reasoning, there could *never* be a right to challenge a settlement on appeal, because doing so could potentially negate the tax commissioner's power to settle a tax claim. But the majority opinion attempts to avoid that extreme position by, for example, allowing the county auditor to challenge a settlement procured by fraud, *id.* at ¶ 22, even though such an appeal could undo the settlement agreement itself.

{¶ 68} While the majority opinion's interpretation might make good policy—after all, "settlement agreements are highly favored in the law,"

*Continental W. Condominium Unit Owners Assn.*, 74 Ohio St.3d at 502—it also makes good policy to do what the General Assembly has done: provide a method by which the tax commissioner may settle tax controversies while allowing county auditors the ability to "check" the tax commissioner's settlement authority when it threatens a local government's tax revenue. That check and balance helps ensure that the county is not harmed by a tax commissioner's poor decision to settle a case.

**{¶ 69}** And as the majority knows, "policy arguments cannot supersede the clear statutory text," *Universal Health Servs., Inc. v. United States*, 579 U.S. 176, 192 (2016), and "the text of a law controls over purported legislative intentions unmoored from any statutory text," *Oklahoma v. Castro-Huerta*, 597 U.S. 629, 642 (2022). This court therefore cannot read into statutes a limit on a county auditor's right to appeal that the General Assembly itself chose not to enact.

**{¶ 70}** For the above reasons, I conclude that neither the settling parties' interest in finality nor R.C. 5703.05 overrides a county auditor's right to appeal under R.C. 5717.02(A).

2. Proposition of law No. 2

**{¶ 71}** Snodgrass's second proposition of law states: "A county auditor cannot be barred from appealing the tax commissioner's final determination under R.C. 5717.02 merely because it did not intervene in the taxpayer's prior appeal." Snodgrass's second proposition of law takes aim at the board's conclusion that because he did not appeal the tax commissioner's first final determination (which is not at issue here), he became bound by the results of the second final determination (which is at issue here). In reaching this conclusion, the board cited this court's decision in *Mason City School Dist. Bd. of Edn. v. Warren Cty. Bd. of Revision*, 2014-Ohio-104, construing it for the proposition that litigants cannot prosecute appeals before the board when they "see[k] to be released from the outcome of . . . proceedings . . . [they] chose not to participate [in]."

**{¶ 72}** This court's decision in *Mason* involved the valuation of a building for tax purposes when a new owner took title to the building during the board's proceedings but was not advised by the board of those proceedings. After the board rendered its valuation decision, the new owner appealed to this court, claiming a right to notice of the board's proceedings from the board. This court disagreed, observing that the new owner had failed to cite any law that the board give such notice to a new owner. *Id.* at ¶ 37-38. In doing so, this court observed that despite the lack of notice from the board, the new owner could have protected its interests by appearing before the board as the new owner or moving to intervene. *Id.* at ¶ 39.

**{¶ 73}** *Mason* is inapt. Unlike the new owner in that case, Snodgrass has pointed to a specific statute—R.C. 5717.02(A)—that provides the basis for the relief he seeks. And nothing in that statute requires a county auditor to have appealed a former final determination in order to preserve his right to appeal a later final determination.

**{¶ 74}** This court should conclude that Snodgrass's failure to appeal the first final determination did not bar him from appealing the second final determination.

### 3. Proposition of law No. 3

**{¶ 75}** Snodgrass's third proposition of law states: "The auditor's independent right to appeal the tax commissioner's final determination under R.C. 5717.02 was not rendered 'moot' by the fact that the tax commissioner entered into a settlement agreement with the taxpayer." Snodgrass's third proposition of law faults the board for dismissing his appeal on mootness grounds. Snodgrass's view is that, contrary to what the board found, this controversy still presents a live issue and that he has a legally cognizable interest in the outcome based on the right to appeal created by R.C. 5717.02(A).

**{¶ 76}** "A '"case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."' " *State ex rel. Gaylor, Inc. v. Goodenow*, 2010-Ohio-1844, ¶ 10, quoting *Los Angeles Cty. v. Davis*, 440 U.S. 625, 631 (1979), quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969). When something happens that makes it impossible for the court to grant the requested relief, the case is moot. *State ex rel. Ohio Democratic Party v. LaRose*, 2020-Ohio-1253, ¶ 5.

### a. The board's approach to mootness

**{¶ 77}** To support its mootness determination, the board cited *its* decision in *Kelsch v. Hamilton Cty. Bd. of Revision*, BTA Nos. 2002-T-1271 and 2002-T-1322, 2003 WL 302393 (Feb. 7, 2003), in which a taxpayer had sought and received from the county board of revision a reduction to the value of his property. The taxpayer appealed to the Board of Tax Appeals, which determined that because the taxpayer had received his requested relief, he had not suffered an injury and therefore lacked standing to bring the appeal. *Id.* at *2. Not only was the Board of Tax Appeals' determination in *Kelsch* not decided under the judicial doctrine of mootness, *Kelsch* is also distinguishable as a factual matter. Unlike the litigant in *Kelsch*, Snodgrass has not received his requested relief—that is, an order from this court reversing the board's decision and remanding the cause for further proceedings. Moreover, *Kelsch* did not address the effect that a settlement agreement has on the board's proceedings.

### b. Nexus's approach to mootness

**{¶ 78}** For its part, Nexus advances a more ambitious argument in support of the board's mootness determination. Nexus's position spans multiple sub arguments, but the crux of its view is reducible to four key concepts. First, settlement agreements are binding on their signatories. Second, those in privity with the signatories are likewise bound. Third, resolution of a privy's claim by way of a settlement agreement extinguishes the claim. Fourth, extinguishment of a

privy's claim by way of a settlement agreement renders moot the pending controversy regarding that claim. Snodgrass does not take issue with this chain of logic in the abstract. Rather, he says that as applied to the specific facts of this case, Nexus is mistaken in characterizing this case as moot because he is not bound by the settlement agreement.

### i. Whether Nexus may raise its mootness argument

{¶ 79} Before addressing Nexus's argument, I will first address whether Nexus may raise it. Relevant here is the sixth (unnumbered) paragraph in the settlement agreement in which the tax commissioner and Nexus recognized that although the settlement agreement "is binding on both the Taxpayer and the Commissioner, it is understood that it is not binding on others if they elect to file an appeal." Snodgrass's argument appears to be that because Nexus agreed that the settlement agreement would not be binding on a nonsignatory, Nexus is estopped from arguing that Snodgrass is bound by the settlement agreement.

{¶ 80} This argument is intuitively appealing: if Nexus stipulated that only the tax commissioner and it were bound by the settlement agreement, then Nexus should be barred from taking a position here that contradicts the stipulation. Although I may sympathize with Snodgrass's desire to prevent Nexus from having it both ways, intuition is not the standard by which to measure an argument's success. Because Snodgrass cites no authority rooted in the doctrine of estoppel, I decline to reach the question. *See Mason*, 2014-Ohio-104, at ¶ 38 (observing that the proponent of an argument had effectively waived it by failing to cite any relevant caselaw in support).

### ii. Whether Nexus's substantive argument regarding mootness is correct

{¶ 81} I now turn to Nexus's substantive argument. Among the many decisions cited by Nexus, *Gough Family Trust v. Vos*, 2018-Ohio-5390 (7th Dist.), is an apt place to begin. In that case, the plaintiff sued the defendant on various property-related claims. While the case was pending, the defendant negotiated a

settlement agreement with the plaintiff that the trial court adopted. The defendant then appealed, raising issues covered by the settlement. The Seventh District Court of Appeals determined that because "the parties resolved the underlying controversy with a settlement of all issues pending before the trial court[,] . . . those issues [were] moot, rendering [the defendant's] appeal moot." *Id.* at ¶ 28.

{¶ 82} *Gough* is readily distinguishable because it dealt with a signatory to the settlement, while this case does not. Generally, that distinction would be dispositive because a settlement agreement cannot bind third parties. *See State ex rel. Dillard Dept. Stores v. Ryan*, 2009-Ohio-2683, ¶ 18 ("The settlement agreement between Dillard and Scott cannot bind the [Bureau of Workers' Compensation] to reimburse Dillard."). But, Nexus says, the law also recognizes that those who are in privity with a signatory—which Nexus claims Snodgrass is—may be bound to a settlement agreement. No decision by this court appears to explicitly endorse this principle, but Nexus points to *The Cadle Co. v. Reed*, 392 B.R. 675, 681 (N.D.Texas 2008) ("federal courts have held that in certain circumstances a settlement can bind others. At common law, this preclusive effect extended to persons 'in privity' with the judgment creditor, judgment debtor, or parties. Privity is merely another way of saying that there is sufficient identity between those entities to bind that other party to the outcome"), and *Triplex Co. v. R.L. Pomante Contr., Inc.*, 2008-Ohio-6301, ¶ 24-27 (10th Dist.) (observing that a corporate officer who was neither a party to the case nor a signatory to the settlement agreement was nevertheless bound by it because the officer was "deep[ly] involve[d]" in and had a "financial interest" in the case).

{¶ 83} When addressing privity within the context of res judicata, this court has said that privity connotes a "mutuality of interest, including an identity of desired result." *Brown v. Dayton*, 89 Ohio St.3d 245, 248 (2000). Yet that meaning of privity is not what Nexus has in mind when it says that Snodgrass is bound to the settlement agreement as a privy. Indeed, rather than sharing a mutual interest

in the result contemplated by the settlement agreement, Snodgrass's interest is antagonistic to that result.

{¶ 84} Nexus instead seeks to establish Snodgrass's role as a privy to the settlement agreement based on doctrines that this court has developed in the field of public law. Nexus argues that accounting for these doctrines leads to the conclusion that Snodgrass is in privity as a nominal party with the real parties in interest, namely, the state of Ohio and Nexus. Nexus contends that when the tax commissioner entered into the settlement agreement, the tax commissioner did so as the state's agent, thereby binding Snodgrass to the settlement.

{¶ 85} In characterizing the parties' relationship this way, Nexus cites *State ex rel. Wilson v. Preston*, 173 Ohio St. 203 (1962). In that case, the relator brought a mandamus action against the director of highways, a state official, claiming that his property had been appropriated. The director of highways argued that the relator lacked a compensable property interest, but this court rejected that defense. In an earlier suit, the relator was determined to have a compensable interest—a determination that was not appealed—against the director of the department of public works, also a state official. Notwithstanding the fact that the two suits involved different state officials, this court concluded that the doctrine of res judicata bound the director of highways to the judgment that had been entered against the director of the department of public works. This court explained, "[T]he state, although represented by the Director of the Department of Public Works, was the party plaintiff [in the prior suit], and in this action, although the Director of Highways is the nominal party, the state is the real party in interest. This is necessarily true because the state can act only through its agents." *Id.* at 210-211. Thus, "it is clear that, where an action is properly brought against a state official to compel him to perform his duty, the state, since the officer is the agent of the state, is the real party in interest." *Id.* at 212.

29

**{¶ 86}** Even assuming arguendo only that this court's logic in *Wilson* carries over to settlement agreements, Nexus's analogy fails because Snodgrass is a *county* official, not a state official. *See* R.C. 319.01 ("A county auditor shall be chosen quadrennially in each county . . . ."). That is, unlike the facts presented in *Wilson*, this case lacks a pairing of two public officials from the same unit of government.

**{¶ 87}** This court's decision in *State ex rel. Hofstetter v. Kronk*, 20 Ohio St.2d 117 (1969), which Nexus also cites, reinforces the point. In that case, this court held that the real-party-in-interest rule in *Wilson* extended to county officials and county government, observing that "agents of the same government are, for the purposes of res judicata the same party or in privity with each other when they represent the government's right and not their own rights." *Hofstetter* at 119. Under that rule, the relator in *Hofstetter*, who had sued a county auditor, was barred from litigating whether he was entitled to retain his position as judge because in an earlier suit he had litigated an identical question against the county prosecutor. *Id.* (observing that *Wilson* applies "notwithstanding the fact that county officials and county government, rather than state officials and state government, are involved").

**{¶ 88}** The Seventh District Court of Appeals' decision in *State ex rel. DeWine v. Crock Construction Co.*, 2014-Ohio-2944 (7th Dist.), is not to the contrary. There, the court of appeals invoked *Wilson* and *Hofstetter* in determining that the Ohio Attorney General was barred from bringing an environmental-enforcement action because the county prosecutor, acting on behalf of the county's health district, had previously brought an enforcement action against a business that was predicated on the same provisions of law for the exact same violations. *DeWine* at ¶ 1. In *DeWine*, the key to the court of appeals' analysis was its recognition that the state officials and the county officials had concurrent powers to enforce the same provisions of law. *Id.* at ¶ 24-26. Here, in contrast, only the tax commissioner may value and assess public utility property, *see Toledo Edison*,

38 Ohio St.2d at 212, and the county auditor has a separate statutory right to appeal, R.C. 5717.02(A).

{¶ 89} This court's decision in *Wasteney v. Schott*, 58 Ohio St. 410 (1898), perhaps best supports Nexus's argument in support of its real-party-in-interest theory. In *Wasteney*, a collection action was brought by the county treasurer against a taxpayer to recover unpaid personal-property taxes. Although the action was technically untimely under the statute of limitations, this court determined that the treasurer was entitled to bring the action because the state was the real party in interest and, under this court's caselaw, a statute of limitations will typically not run against the state in the absence of express statutory language to the contrary. This court took "notice that general taxes levied by the state directly, or through local agencies to which it has delegated that power, constitute a source of revenue for use in the due performance of the functions of the state government." *Id.* at 415. This court further observed that the taxes "go partly to the general funds of the state, for its disbursement in the administration of public affairs, and are in part disbursed, in the due course of local administration, by officers exercising the delegated powers of the state, deemed necessary and proper for that purpose." *Id.* In both instances, "the fund belongs to the state's revenues, and the disbursement is for the public benefit, although local advantages may also result." *Id.* at 415-416.

{¶ 90} This case may concern a different type of tax, but as Nexus points out, Ohio's public-utility personal-property tax is a matter of statewide concern. That tax is assessed by the tax commissioner, who is a state official under R.C. 5727.06(A), and accounts for a public utility's personal property on a statewide basis under R.C. 5727.06(A)(3)(c). The public-utility personal-property tax also creates a lien running to the state under R.C. 5727.06(C). Therefore, according to Nexus, the state is the real party in interest regarding matters affecting the public-utility personal-property tax. I think that this argument proves too much.

**{¶ 91}** Were this court to extend the reasoning in *Wasteney* here, it is hard to see how the county auditor may ever be able to appeal a tax commissioner's final determination under R.C. 5717.02(A) because, by Nexus's logic, the county auditor's interests would *always* be eclipsed by the state's as the real party in interest. That is, any final determination—whether entered against a public utility or, as here, by settlement agreement—would implicate no interests beyond those of the state and the public utility, thereby foreclosing the county auditor's right to appeal. Yet R.C. 5717.02(A) expressly vests a county auditor with the right to appeal a tax commissioner's final determination, provided that that decision affects revenues that primarily accrue to the county in which he or she serves. Adopting Nexus's view would effectively nullify that right, which is contrary to established rules of statutory interpretation. *See In re Adoption of M.B.*, 2012-Ohio-236, ¶ 19 (disfavoring an interpretation that renders a statute meaningless); R.C. 1.47(B) (in enacting a statute, it is presumed that the General Assembly intended the entire statute to be effective).

**{¶ 92}** Finally, Nexus attempts to bolster its argument by citing cases from the Eleventh District Court of Appeals that involve taxpayer actions. *See Laituri v. Nero*, 138 Ohio App.3d 348 (11th Dist. 2000) (taxpayer action brought on behalf of the city); *State ex rel. Kolkowski v. Lake Cty. Bd. of Commrs.*, 2009-Ohio-2532 (11th Dist.) (taxpayer action brought on behalf of the county). Nexus characterizes these decisions as standing for the proposition that "taxpayers with nominal standing to represent the interests of political subdivisions are subject to dismissal under the mootness doctrine where the political subdivision itself has settled." But this case is not a taxpayer action, and it is unclear how Snodgrass could be construed as a taxpayer for the purpose of this case. I conclude that this controversy is not moot.

4. Proposition of law No. 4

{¶ 93} Snodgrass's fourth proposition of law states: "The tax commissioner's final determination . . . did not involve the mere performance of a ministerial act." Snodgrass's fourth proposition of law challenges the board's conclusion that he could not appeal the tax commissioner's final determination, because that determination was the product of a ministerial act. The board reasoned that "[t]he issue of valuation was the subject of prior litigation, and that case ended in settlement. That appeal was remanded to the Commissioner, and she issued a final determination as the last ministerial step to finalizing the agreement." BTA Nos. 2022-1296 and 2022-1247, 2023 WL 1992250, *5 (Feb. 9, 2023).

{¶ 94} The board did not cite any authority to support this conclusion, but Nexus says that the board's conclusion is supported by this court's decision in *Rowland v. Lindley*, 58 Ohio St.2d 15 (1979). In *Rowland*, the tax commissioner had entered a journal entry that gave effect to this court's mandate in a prior appeal involving the same taxpayer. The taxpayer appealed that entry to the board, and this court affirmed the board's dismissal of the taxpayer's appeal, holding that "a journal entry which the Tax Commissioner issues only to carry out the expressed mandate of this court is not a 'final determination' within the purview of R.C. 5717.02." *Id.* at 16. As Snodgrass correctly points out, *Rowland* does not apply here, because the tax commissioner did not enter the final determination in response to a mandate from this court.

{¶ 95} Nexus fares no better under *Makowski v. Limbach*, 62 Ohio St.3d 412 (1992), another case it cites in support of the board's decision. In *Makowski*, the Geauga County auditor had appealed the tax commissioner's certification of Geauga County's share in the state library fund to the board. This court held that the certification was not appealable under R.C. 5717.02, because the "commissioner [did] not adjudicate any matter in this process; she perform[ed] ministerial functions by applying known numbers to estimated income tax

collections." *Id.* at 415. The values reflected on the tax commissioner's final determination in this case, however, hardly memorialize the computations of a mechanical exercise. Indeed, as Nexus itself says, the values are "discretionary" in their character, reflecting the resolution of multiple contested issues of fact and law.

{¶ 96} Even if the settlement agreement was the product of discretion, Nexus says that the final determination was not, because the tax commissioner merely "repeated" the settlement agreement's values in the final determination. But by this logic, a preliminary version of a final determination that the tax commissioner copies and pastes into a final version would also not be a final determination appealable under R.C. 5717.02(A), because the final version would be merely repeating by rote the text of the preliminary version. This court's decision in *Adams* does not countenance such an overly thin distinction. *See Adams*, 2017-Ohio-8853, at ¶ 18 (identifying the elements of an appealable final determination).

{¶ 97} I conclude that the tax commissioner's final determination did not arise from a ministerial act.

5. Proposition of law No. 5

{¶ 98} Snodgrass's fifth proposition of law states that the board "erred by applying its erroneous ruling to the auditor's timely appeal of the commissioner's final determinations of value for tax years 2020 and 2021." Snodgrass argues that even if the court were to hold that the board was right as a general matter in concluding that his failure to participate in the earlier proceedings had a preclusive effect, then that effect should not extend beyond the 2019 tax year, because only that tax year was the subject of the first final determination. I need not reach this argument given my analysis of Snodgrass's second proposition of law.

### III. CONCLUSION

{¶ 99} I would—and I believe this court should—reverse the Board of Tax Appeals' decision dismissing Snodgrass's appeal and remand the cause to the board for further proceedings. Hence, I must dissent.

————————————

Roetzel & Andress, L.P.A., Stephen W. Funk, David J. Wigham, and J. Benjamin Fraifogl, for appellant.

Dave Yost, Attorney General, and Samantha Cowne, Assistant Attorney General, for appellee Tax Commissioner Patricia Harris.

Vorys, Sater, Seymour & Pease, L.L.P., Anthony L. Ehler, John J. Kulewicz, Steven L. Smiseck, Jeffrey Allen Miller, and Kara M. Mundy, for appellee Nexus Gas Transmission, L.L.C.

Bricker Graydon, L.L.P, Rebecca C. Princehorn, Nelson M. Reid, and Brodi J. Conover, urging affirmance for amici curiae Margaretta Local School District, Perkins Local School District, Columbiana County Auditor Nancy Milliken, Erie County Auditor Richard H. Jeffrey, Fulton County Auditor Brett J. Kolb, Henry County Auditor Elizabeth Fruchey, Huron County Auditor Roland J. Tkach, Sandusky County Auditor Jerri Miller, Stark County Auditor Alan C. Harold, and Wayne County Auditor Jarra L. Underwood.

Mark Anthony Long, Ohio Chamber of Commerce; and Clarence Luther Heckman, Ohio Council for Retail Merchants, urging affirmance for amici curiae Ohio Chamber of Commerce and Ohio Council for Retail Merchants.

————————————